The second case to be argued today, Kassas v. State Bar of California, Case No. 21-55900. Mr. Resnick, you're by video. We'll hear from you for appellant. Okay. Good morning, Your Honor. If it would please the Court, Matthew Resnick for appellant. Honored to be here, and I'd like to reserve five minutes for rebuttal, if that's possible. I will try to monitor it myself, but let's try for five minutes. Your Honor, we believe that this is a case under 523A7, where the bankruptcy code is quite clear, that the client security fund under the California State Bar of Rules and Regulations is a debt comparable to compensation for pecuniary loss. Now, those words are very important because under 523A7, there's a self-effectuating statute in the bankruptcy code that would prevent the dischargeability of this debt. Now, under 727, all debts are discharged unless there's a discharge exception under 523. The State Bar here has tried to manipulate the bankruptcy code's holding in Kelly v. Robinson, or the Supreme Court's holding in Kelly v. Robinson, that has held that criminal restitution is non-dischargeable under 523A7. The Supreme Court has found that it preserves from discharge any condition that the state criminal court would impose. Now, the statute in and of itself is compensatory. I don't believe that anyone could see that the actual damages that were paid to the victims slash clients of my client, Mr. Casas, were paid by the client security fund in a discretionary function. Can I ask you what your interpretation of the fine that can be imposed is? For example, if your client had allegedly stolen $5 from a client account that would have been within the bar's jurisdiction, would they have had the and presumably they would have had authority to go and award $5 as compensation. Could they have awarded more than that, or would they have been limited to the amount that was actually stolen? Under the statute that they're using, 6140.5, it's for the direct expenses or costs or damages related, so they would only be able to recover that $5. And that's if the state bar decided in its discretion to pay the $5. They might not feel that it rose to the level that the victim was entitled to that $5. Yes, Your Honor. So I understand your argument in the abstract, but what about Kelly v. Robinson, where the Supreme Court addressed the very same section of the bankruptcy code and found that, and they read it as non-dischargeable. What's the difference here? Well, Your Honor, that's a great question. Here we have a state disciplinary action. We do not have a criminal action. There was no criminal judge, for example. When you look at federalism, the Supreme Court, specifically in Kelly v. Robinson, was very clear that this application is based on tradition, based on the historical elements of the Bankruptcy Act, and found that this is only imposed on state criminal proceedings. Now, there's a huge difference between criminal restitution and civil restitution. Criminal restitution under the California Penal Code 1202.4 goes through a litany of elements in order to find that criminal or that defendant responsible for the debt that was imposed by a state criminal court judge, not a state bar court judge, and certainly not legislation that was trying to undermine previous court decisions, such as Taggart, in which they would try to circumvent the bankruptcy code in Congress's intent, where there is clear and unambiguous language under 523.87 that this is not to be compensation for pecuniary loss. Now, not all is lost, as the Supreme Court in both the dissent and in the actual holding in Kelly v. Robinson did state that there are other types of actions that the state could have taken. One would be under 523.82, 523.84, 523.86. These all relate to deceitful conduct, and that is exactly what the state is prescribing here, as they're trying to prevent, if not punish, the disbarred attorney or the suspended attorney by allowing for recompensation to the victims. Now, in the state… Can I ask a question about the processing costs? Should we analyze the fine and the processing costs separately here? Because the processing costs… I mean, we have In re Findley that suggests that disciplinary costs are non-dischargeable. At what point would the… I guess what I'm asking is, it seems to me that the processing costs could be disciplinary in nature and therefore fall within In re Findley in a way that the fine might not. Would you agree with that assessment? No, I don't, respectfully, Your Honor. I do believe Congress means what it intends to say. I do believe that judicial interpretation, judicial exception, should not negate the limitations in the Bankruptcy Code statute. Congress means what it says. No, I'm agreeing with you on the limitations, but it seems like the analysis is different for the processing costs. I guess that's my only point. The processing costs, as I understand it, are not a one-to-one ratio with what it costs the state bar to process these things, but it's an average figure. And so, therefore, couldn't it be deemed more of a disciplinary cost than an actual pecuniary remuneration? Again, Congress did not look at disciplinary costs and expenses as self-effectuating, non-dischargeable. Perhaps those costs could be non-dischargeable under another code section. Well, but if they'd said, we want $100,000 for our processing costs here. An arbitrary number. Yeah, I mean, let's say it bore no resemblance to the actual processing costs. That seems to be what the courts are, you know, if there were discretion to go above that and just say, you know, we want you to pay for all the costs of monitoring. You know, you've got to contribute to a fund that pays for an individual to go out and monitor all of the client funds that attorneys are holding. And it had no resemblance to what, you know, your client had actually done. Wouldn't that arguably fit within a disciplinary cost? Now, I'm not saying that's what happened here. I'm just trying to conceptually understand if we should treat these as different categories. You may be right under both, but it seems that conceptually they're different. Conceptually, you're correct. I believe they're different, but they're not necessarily distinct and they're not the state bar in its deciding as to how much a cost for a disciplinary action would be. I don't think is within this case, within the holding of this case, as there are strict disciplinary costs that they've demanded and the state Supreme Court has ordered for my client to pay back. But I do believe those disciplinary costs, despite how they got around to those, are dischargeable, but certainly subject to the scrutiny under 523-87, they just don't pass the muster. They are compensatory, irrespective of how the state bar has reconciled those numbers. So, Your Honor, and I think that gets to my next point, is that the bankruptcy court, in reviewing it, did look to this as somewhat of a rehabilitation and punishment. And our argument is those can be served outside of the 523-87, that this case that has been certified as publicly important and has no binding authority, I think has recently really sprung up to life based on the Sheridan case, in Ray Sheridan, which is the Ninth Circuit case, as well as the Scheer case, in which the court tried to prevent from incrementally taking this horizonless approach into state bar costs and or statutes that are trying to circumvent the bankruptcy. Just so I understand the current lay of the land, there's no circuit court decision that's actually addressed this specific question. Is that correct? That's correct to my understanding, Your Honor. It looked like four district court opinions that have addressed it. All of them have unanimously said that this is non-dischargeable. These similar debts are non-dischargeable. So if we... Well, what do district courts know? Unless you're in New York. But if we go your way, you're asking us, which is fine. I just want to make sure I understand. To reverse these four district court opinions, do you have any other precedent adopting your position at this point? Well, Your Honor, I would like to say that Congress had seen that there were some issues and flaws coming out of the Kelly v. Robinson case. And that these amendments are not for the state courts and the districts to impose, district judges to impose on the debtor, but it's actually Congress that must decide what's dischargeable and what's not dischargeable. And briefly, if I can go through 1991, there was a Penn v. Davenport case, which found that Chapter 13 debtors do not find that criminal restitution is dischargeable because it wasn't specifically stated in the code. In 1991, Congress enacted the Criminal Victim Protection Act, which created 1328A3, which preserved the state's criminal restitution amounts and federal criminal restitution amounts. And then in 1994, Congress added the 523A13, which was restitution for crimes are non-dischargeable. Congress' intent was specific. The language of 523A7 is clear and unambiguous. And I believe that this debt should have been discharged, if not under any other section. Certainly, the self-effectuating statute of 523A7 did not apply. And I'd like to reserve the rest of my time unless there's further questions. Thank you, counsel. We'll now hear from the State Bar. Yes. Please do, actually. Good morning. May it please the Court. Suzanne Grant on behalf of Apelli, the State Bar of California. Appellant Anthony Cassis is a disbarred attorney who owes the Client Security Fund, or CSF, over $2 million due solely to his dishonest conduct. The bankruptcy court below determined that this debt to the CSF was not discharged in Cassis' 2019 Chapter 7 bankruptcy because it fell within the 11 U.S.C. Section 523A7 discharge exception as a fine, penalty, or forfeiture payable to So putting aside the disciplinary costs for a minute and talking about the debts that are owed to because of payments made to the victims. Yes. So the statute says that the debt is not discharged, quote, to the extent such debt is for a fine, penalty, or forfeiture payable to or for the benefit of a governmental unit and is not compensation for actual pecuniary loss. So you have to meet both those requirements to be non-dischargeable. Well, how do you meet the second requirement here? So, Your Honor, while the amount of reimbursement might be calculated to the amount of the victim's loss and the monetary harm caused by the respondent attorney, the reimbursement obligation to the State Bar, which is part of the discipline order in Mr. Cassis' case, is not based on the victim's injury but on the important public protection goals of rehabilitation and deterrence, similar to the criminal justice system that the United States Supreme Court in Kelly determined were sufficient to render restitution non-dischargeable. Well, Kelly dealt with restitution, which has its own history. And if I recall correctly, I think they were particularly focused on a Connecticut restitution statute, which had all sorts of provisions that varied from the sheer direct amount suffered of loss suffered by the victim. But here that's not the case, right? It's a one-to-one situation, isn't it? Well, here, as I stated, the amount of harm is the victim's loss, but Kelly was very clear that that's not determinate to the analysis. And in fact, you know, numerous cases, and one, the Searcy case in this circuit, which was a bankruptcy appellate court case affirmed by the Ninth Circuit, recognized that civil sanctions are non-dischargeable under the reasoning of Kelly, despite the fact that they may pay for the costs of attorneys' fees. They may pay for the cost of those fees, but the court in that case noted that that compensation was incidental to the main purpose of that Idaho statute imposing those costs. So here the main purpose of the CSF debt is not to compensate the victim. The CSF reimbursement obligation is for the important public protection goals of the attorney discipline system. In Brookman, the California Supreme Court, which has plenary authority over that. Can I ask you about that? You said that the purpose here is rehabilitation as opposed to compensate. How does that relate, though, when the money has to be a one-to-one correlation? I mean, you would agree with my hypothetical that if he only stole $5, that's the maximum fine you could get. Right. So it is related to the amount of money they stole, which is related to the gravity of the offense. But not just related to the amount of money. That doesn't go into the state bar coffers. It must be passed on. And I guess you'd say the similar thing happens in criminal restitution as well. But it's not always one-to-one in those other cases. Here it seems like it is much more of a direct correlation, that the state bar is actually stepping into the shoes of the wronged victims. Well, that is true, but that's not determinative of the analysis. For instance, in Finley, those were the costs of the prosecution. Those were the discipline costs, and that bore relation to the cost of what was meant to prosecute. But yet this Court recognized that regardless of the fact that it did indeed compensate the state bar, the ultimate purpose of those discipline costs were for public protection, were to support the attorney discipline system's goals of rehabilitation and deterrence. And there's really no reason to treat restitution that's paid back by CSF any differently than disciplinary costs, which this Court found under Finley, in Finley, were non-dischargeable. You know, further, the amount of money the attorney is required to pay back to the state bar is not equivalent to what the victim was owed. For instance, CSF does not take into account interest owed. Here Cassis owed interest on payments going back to 2011 in the Supreme Court order. It ordered him to pay interest going back to that date. But once the CSF debt is paid out, that interest is no longer owed. Rather, the attorney must pay only the principal plus 10 percent interest, as well as the processing cost for that payment. Has the processing cost in this case been segregated already? Is there evidence below of how much of this amount is processing cost? What is the processing cost here? So the processing costs are $182 times the 356 cases. They are segregated. It's in the administrative record. There is a client security fund ledger. I apologize, I don't have the page number. But you can easily figure that out because the processing costs are segregated. And so the $182, that's uniform for any case that is brought? That's a processing fee for any case that the state bar brings? Yes, that's correct. That's uniform across the board? Uniform, yes. So whether it costs? And how is that number calculated? I'm not sure exactly how it's calculated. I think, you know, it's set, the client security fund commission and staff determine, you know, the average cost of how much it takes to process these cases. I don't have an exact answer to that. I can certainly submit a supplemental brief to get that information. It doesn't strike me as a money generating, a revenue generating source here. No, and the primary source of revenue for the client security fund is part of licensing fees. While obviously, you know, the attorney must pay back the CSF for debt incurred on its behalf, the primary funding comes as a portion of active attorney's fees. So once Mr. Cassis, if he didn't indeed reimburse the CSF, that money would go back to help other victims of, you know, misconduct in addition to licensing fees. Can I go back to the statute for a minute? Sure. So the statute, as I indicated, has these two prongs, and both have to be met for non-dischargeability. And the second prong is and is not compensation for actual pecuniary loss. So would you give me an example of something that would be dischargeable because it would not meet the second requirement? So a good example of that is mandatory fee arbitration in the Scheer case. This court looked at that, and this court felt that that was compensation because it compensated the client for fees that they gave that attorney. So in that case, that money was owed as part of in that mandatory fee arbitration case, and that was considered compensatory by the Ninth Circuit. So if the government has, if an order of the court had been hypothetically, you must pay X amount to Jones because he is satisfied that that was his actual loss as a result of your misconduct. Would that be, under your analysis, dischargeable or not dischargeable? If it was paid, if it was payable directly to the victim, it would be dischargeable based on this court's decision in Albert. So why, what is, why do, is there any practical difference between a situation where the payment is made directly to the victim and is dischargeable, and the state for the protection of victims has set up a situation where we know that not every miscreant is going to be able to pay the full amount. So we'll pay it. We'll determine the amount that the victim lost, and then we'll order the miscreant to reimburse us in those exact amounts. What's the difference between those two situations? That's a great question. It's because of the language, as appellants counsel discussed, the strict language of 523A7 requires the payment to be made to a governmental unit. So in cases when it's payable directly to the victim, you have the exact same public policy concerns addressed in Kelly. However, it's payable to a nongovernmental party. So it doesn't fall within the 523A7 language. So once you have it here, you have all the requirements met. You have it for the benefit of the governmental unit as well as being paid to the governmental unit. Are there cases in criminal restitution, because sometimes in criminal restitution, in fact I think a lot of times it's paid directly. The court orders it, but it's paid directly to the individual, and then those are found to be nondischargeable. So I don't understand how that argument is consistent. Well, the Ninth Circuit held that it's key that it be paid to a governmental unit. The other cases, there have been throughout the country cases that have extended Kelly to hold criminal restitution payable to third parties dischargeable, but the Ninth Circuit concluded that, I'm assuming it may have found differently due to the fact that it said it had to have been paid to a governmental unit. So it might be just a difference in circuit interpretation of the statute. So here, you know, the key in Kelly was that Kelly made clear that the federal courts need to look at the state law, the state's important interest in that. And as they made clear in Brookman, the California Supreme Court made clear that these costs that had been paid out by CSF was for purposes of public protection. So both in Finley and in Kelly, there was that recognition. The legislature has also made a determination that payment to CSF serves important public protection interests by mandating the amount must be paid back in full as a condition of continued practice. Now, Appellant's counsel has made the argument that this is a discretionary payment, that it's completely voluntary, and therefore it is compensatory, but that is not so. I'm looking at Kelly, and it says the following, quote, although restitution does resemble a judgment for the benefit of the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury but on the penal goals of the state and the situation of the defendant. That's not the situation here. Here it's a simple one-to-one. It's like the state is acting like a bank, in effect, saying we'll let the victim recover, we'll give them the money, and then we'll get it back from the misgrant. Isn't that totally different from what the Supreme Court is describing in Kelly? No, it's not different because the State Bar is not a debt collector. In fact, in part of Mr. Cass's discipline, it was ordered that he pay back CSF to the extent of reimbursement, and the Client Security Fund is not a voluntary debt collection proceeding, as I was just getting to. There's a quasi-administrative process in which the victim must show that the attorney, except in limited circumstances, has been disbarred. Then the Client Security Fund conducts an administrative process. There's due process where the respondent gets entitled to object. And most importantly, the commission has to find that there was dishonest conduct. So in every single one of these 356 cases, there was a finding that Mr. Cass was engaged in dishonest conduct justifying the reimbursement. So therefore, it's not merely a means to collect debt. It's a means of making that attorney confront in concrete terms the harm that he's caused, as Kelly recognized was so important. And there's clearly no reason, as Appellant's counsel made clear, that Kelly should be limited to criminal restitution only. Not only, as they stated in the Searcy case, this Court has extended Kelly's holding throughout beyond the criminal context. In the case of Hercules, this Court also recognized that civil contempt sanctions are generally non-dischargeable. Other courts throughout the country have held that civil penalties, civil fines. But civil contempt, let's talk about that one first. Because civil contempt seems to be, that is a punitive sanction. I mean, I'm trying to think of an example where civil contempt, presumably it could be associated with the cost that, you know, your action incurred. But more often than not, it's a punitive award. I was just using that as an example to demonstrate. I understand, but I want to make sure that those examples, I want to make sure where they fit in. So keep going. Yes, so I was just, and courts throughout the country have also extended Kelly beyond the criminal context. And the United States Supreme Court, in the Middlesex case, has recognized that the important public protection interests of the state bar disciplinary system are akin to the criminal justice system. In that case, they noticed the policies underlying younger abstention in criminal cases apply equally to attorney disciplinary proceedings due to those important state interests. So there's absolutely no reason to treat these costs as part of that attorney disciplinary proceeding and intertwine with it differently than in criminal restitution. So here, the CSF did make a separate finding. They did find that Mr. Cass is engaged in misconduct. And I'm just going to, I see I only have a minute left, so just to wrap up. So here CSF's reimbursement is not as chargeable. It meets all three requirements of Section 523A7 as a fine, penalty, or forfeiture, payable to the state bar governmental unit, and is meant to serve the benefit of the public at large, and therefore is not merely compensatory. I'm going to come back at the risk of being a broken record to the language of the statute. So I asked you before, given that there are two prongs, what would be an example of a dischargeable debt? And you said, well, if the payment was made directly to the victim. But, of course, that only relates, by definition, the first prong requires that the payment be made to the government. So, but Congress did not stop there. They said it also has to satisfy the second prong of the not being compensation for actual pecuniary loss. So what is an example of a payment that would be dischargeable, even though it was made to the government because it did not satisfy the second prong? Well, for instance, state bar licensing fees, debt owed for that would be dischargeable because there's no disciplinary aspect to it. You know, there could be many costs, administrative fees owed to a governmental entity that would not be part of rehabilitation, deterrence, punitive in nature. The best example for the state bar, I think, would be licensing fees or other payments owed to just in the means of keeping their licensed practice law. Okay. All right. Thank you, counsel. Time for rebuttal. Four minutes for rebuttal. Thank you, Your Honor. I think taking at face value the statute as just explained is, and I believe the panel was kind of alluding that, is not penal in nature, but compensatory. And they're not acting just like a bank here, but almost like an insurance company that subrogates on behalf of their victims. Here they're actually taking out what's I believe everyone's agreed that there's a dischargeable debt to the actual victim, at least under a seven. They're all of a sudden circumventing the entire bankruptcy code and pooling it together in order to try to make it non-dischargeable. And again, I don't think that's what Congress intended. In fact, counsel just stated that Kelly states that it looks to state law. That is not what Kelly stated. Kelly versus Robinson specifically was limited to state criminal procedures. In fact, if I could read the prop, the prospect of federal remission of judgments imposed by state criminal judges would hamper the flexibility of those judges and choosing the combination of imprisonment fines or restitution, most likely to the further the rehabilitative and deterred goals of the state criminal justice system. They were specific and narrowly tailored their decision to straight criminal courts. And that's the reason why is that the straight, the state criminal court judge has reviewed the entire proceedings. They have the authority to impose penal and punitive sanctions against a miscreant, a defendant, anybody accused of a crime. And again, 1202.4, the California penal code specifically relating to criminal restitution is the, there has to be a claim by the victim. There has to be a loss by the victim. It has to be the result of the crime of which that crime defendant is ultimately convicted of. These are different standards than just looking to the state legislature and determining that there's some rehabilitative or punitive effort. In fact, I think there's an abstract benefit of this criminal deterrence and rehabilitation is convoluting the entire argument. And in the Sheridan court, and I believe in the sheer court, again, the court stated that there was an anchor incremental, but horizonless approach to the state bars attempt in trying to impose the self-effectuating statutes of five 23, a seven. There's a federalism specifically dictates that the bankruptcy code will not be subject to the penal law. However, here in a disciplinary panel or with respect to a dollar for dollar compensation, I believe that the bankruptcy code is outside the self-effectuating statute of five 23, a seven. And if there is any non-dischargeable component of it, it's not found where there's a fine penalty or forfeiture payable to the government union unit. That is not to be compensation for the actual pecuniary loss. These are the discharge under five 23 is to be strictly construed. And I believe that's why Congress enacted in 1991, the criminal victim protection act. And I believe in 1994, they added the five 23, a 13, which is the restitution for criminal crime crimes. The word payable creates an economic light over the phrase that suggests that the benefit must be conferred from some monetary value of the debt by the government. And that's not the abstract benefit for some type of criminal deterrence. Clearly here, the amounts that were ultimately payable were to the victims. The, the client security fund decided in its own discretion to, to make these payments to the victims, but that does not in any way negate the fact that five 23, a seven would not apply here specifically because it was compensation dollar for dollar. I believe it offers some weak support for exempting restitution artists from discharge when converting that debt that was owed to victims, to non-dischargeable principles. And that ultimately Congress would have included state bar discipline or restitution or anything of the light, not criminal light, but the specifically state bar discipline or restitutions to any licensing agency. If they intended for that to be non-dischargeable under five 23, a seven without your honor. Thank you counsel. Thank you both for your arguments. It's a very interesting case and we appreciate the professionalism and, and thought that's gone into the presentations today. The case is now submitted and that concludes our argument calendar for the day. All rise.
judges: BYBEE, NELSON, Rakoff